UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID GOTTAGE,

       Plaintiff,

v.                                              CASE NO. 10-11049

CITY OF ST. CLAIR SHORES, JOHN      HON. MARIANNE O. BATTANI
ROOD, JACK LATOUR, MICHAEL
NOTORLANO, CHRISTOPHER PERIATT,
HENRY BERGERON, DAVID SPENS,

       Defendants.
_____/

**OPINION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants' Motion for Summary Judgment. (Doc. 53). The Court heard oral argument on December 15, 2011, and at the conclusion of the hearing took the motion under advisement. For the reasons that follow, Defendants' motion is **GRANTED-IN-PART and DENIED-IN-PART**.

**I.    STATEMENT OF FACTS**

In the early morning hours of June 4, 2008, Plaintiff David Gottage fired a shotgun into the ground outside of his father's house at 22619 Lake Boulevard to scare a cat that had been tearing up garbage around the neighborhood. (Doc. 57 Ex. A at 88). Plaintiff admits to have been drinking heavily the day before, explaining that he consumed 16 to 18 beers, whiskey and a number of Vicodin pills, each day for the previous four days. (Doc. 53 Ex. 11 at 153-190). After discharging the shotgun,

Plaintiff walked back into the home. The parties tell different stories of what happened next.

Plaintiff says he walked into his bedroom and put the gun under his bed. (Doc. 57 Ex. B at 184). Defendants say he did not put the shotgun away but instead, pointed it at his nephew, Ryan Muysenberg, who was in the house eating breakfast. (Doc. 53 Ex. 2 at 63-83; Ex. 3). Plaintiff warned Muysenberg not to return to the home, indicating that if he did, he would be shot. Muysenberg left and called the City of St. Clair Shores Police Department. Muysenberg told the police that Plaintiff was intoxicated and had possession of multiple firearms. Muysenberg then drove to the City's Police Department and met with detectives. He told the officers what happened and added that just two days earlier, Plaintiff threatened to kill him, other family members, and two attorneys who had worked on his father's estate. Muysenberg also told them that Plaintiff had carefully prepared firearms and ammunition throughout the residence.

At approximately 7:00 a.m. on June 4, 2008, a call went out to the City's police officers that there was a barricaded gunman located at 22619 Lake Boulevard. (Doc. 57 Ex. E at 15-16). Officers Chomos and Wierzbicki were first to arrive at that residence. They made contact with Plaintiff through a bathroom window while he was showering. The officers indicated that they wanted to come in the house, but Plaintiff told them that they needed to get a warrant before he would let them in. Defendants say Plaintiff told Chomos and Wierzbicki that if they tried to enter his home, they should "be aware" because "he would be ready." (Doc. 53 Ex. 4 at 11-16). Plaintiff denies making those threatening statements. (Doc. 57 Ex. B at 199-201). After showering,

Plaintiff looked at the driveway of the home, and not seeing a police car, went to bed and fell asleep.

Around 8:20 a.m., while Plaintiff was sleeping, the City's Police Department deployed the ERT team at the residence. (Doc. 53 Ex. 5; Doc. 57 Ex. E at 22-35). The City's ERT team is a SWAT-like emergency police unit, dressed in military garb. Officers blocked off the surrounding streets and established a perimeter around the residence. ERT members deployed an armored vehicle onto the front lawn of the home. Officers attempted to contact Plaintiff by loudspeaker and telephone, calling the home every ten minutes. At 11:00 a.m., officers heard "muffled shouts" from inside the residence. Defendants continued their efforts to contact Plaintiff for another three hours. At approximately 2:00 p.m., ERT Officers exited the armored truck and approached the front of the home using a large, ballistic riot shield. They broke out the front windows and tossed CS tear-gas canisters inside.

Despite eight hours of police activity outside the home, Plaintiff never answered the phone or exited the residence. According to Plaintiff, he had no idea of what was going on because he was sleeping. (Doc. 57 Ex. B at 204-208). He explains that after falling asleep, the next event he remembers was hearing a "boom" and seeing something come flying through the window. He got out of bed, and as he walked through the front room, another "bomb" came through a window. Prior to hearing the initial "boom," Plaintiff never heard a phone ring; never heard anyone on a loudspeaker; never heard people knocking on doors; and never heard anyone yelling at him.

After he awoke, Plaintiff exited the front door of the home, unarmed, with hands in the air. (Doc. 57 Ex. B at 205-206, 209, 211). Defendant Rood states Plaintiff's

3

hands were at his side. (Doc. 57 Ex. E at 36). Rood was approximately fifty feet from Plaintiff when he exited and there was no indication from any of the other officers that Plaintiff had a weapon or was about to get a weapon. (Doc. 57 Ex. E at 34). As Plaintiff walked out of the front door on the porch, Rood stated Plaintiff acted as if nothing was going on, and asked why the police were there. (Doc. 57 Ex. E at 35). Once again, the parties tell different stories of what happened next.

According to Plaintiff, after he exited the front door, Defendants Rood, LaTour, Notorlano, Periatt, and others began to close on him, with weapons drawn and aimed. (Doc. 57 Ex. E at 38-42). They began to rush, yelling at Plaintiff to get down and lie flat. Plaintiff explained he heard the officers' command, but could not get down on the porch because it was too small for him to lie flat. To comply with the officers' order, he turned his back to them and began walking toward the driveway so he could lie flat. At this point, officers Rood, LaTour, and Notoriano quickly grabbed him from behind and tackled him to the ground. They then lifted him up and drove him back down to the ground, face first into the concrete driveway. (Doc. 57 Ex. B at 217-218, 231-232). While on the driveway, the officers kicked Plaintiff in his back a couple of times and broke his nose. (Doc. 57 Ex. B at 213, 217). Plaintiff states that because of this altercation, he suffered injuries to his left arm and shoulder, had a broken nose, black eyes, scabs and cuts all over his face, abrasions on his legs, and "foot prints" on his back which caused bruising. (Doc. 57 Ex. A at 74-81). Plaintiff offers medical records from four different sources to confirm the injuries sustained. (Doc. 57 Exs. O, P, Q, R).

Defendants say Plaintiff refused to follow their commands to get down after he exited the home. (Doc. 53 Ex. 6 at 42; Ex. 8 at 37-40; Ex. 9 at 28-30). They claim that

without any warning, he suddenly turned to his right, with his back against the approaching officers, and began walking away toward the open garage and unsecured pickup truck parked in the driveway. It was at this point that officers Rood, LaTour, and Notoriano tackled Plaintiff from behind and secured him on the ground in the driveway. Defendants claim Plaintiff began to struggle with the officers while on the ground and resisted arrest. He "turtled" his arms underneath his body, refusing to release his hands for handcuffing. (Doc. 53 Ex. 6 at 43-50; Ex. 10 at 21-26). Rood pulled Plaintiff's left arm free and behind his back; Periatt pulled Plaintiff's right arm free and behind his back. Together, they secured Plaintiff in handcuffs. Then, Notoriano, LaTour, Periatt, and others searched the residence, recovering high-powered rifles, shotguns, and one hand gun. (Doc. 53 Ex. 5).

Subsequent to the events that took place on June 4, 2008, Plaintiff pled guilty to the felonious assault of Muysenberg and resisting, obstructing, and assaulting a police officer. (Doc. 53 Ex. 13).

On March 15, 2010, Plaintiff filed the instant lawsuit against the City of St. Clair Shores and the individual officers involved in his June 4, 2008 arrest. (Doc. 1). On June 1, 2011, Plaintiff filed a five-count amended complaint. (Doc. 39). Count I is a §1983 excessive force claim; Count 2 is a §1983 unlawful arrest/search claim; Count III is a Monell claim against Defendant City; Count IV is an assault and battery claim against Defendant Rood only; and Count V is a gross negligence claim against all Defendants. Defendants filed motion for summary judgment under Rule 12(b)(6) and/or Rule 56. (Doc. 53). The Court heard oral argument on December 15, 2011. Defendants' motion is now before the Court.

5

## II. STANDARD OF REVIEW

### A. Fed. R. Civ. P. 12(b)(6)

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the ground upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). A complaint need not contain detailed factual allegations, but it must include more than labels and conclusions. Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). A court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. The Court must accept the well-pleaded factual allegations as true. Hensley Mfg. v. ProPride, Inc., 579 F.3d 603 (6th Cir. 2009) (citing Twombly, 550 U.S. at 555). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-that the pleader is entitled to relief." Iqbal, 129 S.Ct. at 1950 (quoting F.R. Civ. P. 8(a)(2)).

6

**B.** **Fed. R. Civ. P. 56**

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The Court "must lend credence" to the non-moving party's interpretation of the disputed facts. Marvin v. City of Taylor, 509 F.3d 234, 238 (6th Cir. 2007) (citing Scott v. Harris, 127 S.Ct. 1769, 1775 (2007)). The non-moving party may not rest upon its mere allegations, but rather must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. Hopson v.DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

7

## III. ANALYSIS

### A. Qualified Immunity and the § 1983 Claims

Pursuant to 42 U.S.C. § 1983, Plaintiff brings claims for excessive force, unlawful arrest, and unlawful search against Defendants John Rood, Jack LaTour, Michael Notorlano, Christopher Periatt, Henry Bergeron, and David Spens. Defendants argue they are entitled to qualified immunity on all of Plaintiff's § 1983 claims. Plaintiff responds that qualified immunity is unavailable to any Defendant on the record presented. The Court reviews the general principles of qualified immunity before applying the doctrine to Plaintiff's § 1983 claims.

#### 1. Qualified Immunity

The doctrine of qualified immunity shields a state actor from § 1983 liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009) (internal quotation marks and citation omitted). In resolving the issue of qualified immunity, courts engage in a two-step decisional process: "defendant enjoys qualified immunity on summary judgment unless the facts alleged and evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." Jefferson v. Lewis, 594 F.3d 454, 459 (6th Cir. 2010) (internal quotation marks and citation omitted). The Supreme Court has explained that, "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the

particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009); Bishop v. Hackel, 636 F.3d 757, 772 (6th Cir. 2011).

"A court should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." Flint ex rel. Flint v. Kentucky Dept. of Corrs., 270 F.3d 340, 346 (6th Cir. 2001) (internal quotation marks and citation omitted). The plaintiff bears the ultimate burden of proving "that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." Sheets v. Mullins, 287 F.3d 581, 586 (6th Cir. 2002).

### 2.  The Excessive Force Claim

"[T]he right to be free from excessive force is a clearly established Fourth Amendment right." Binay v. Bettendorf, 601 F.3d 640, 652 (6th Cir. 2010) (internal quotation marks and citation omitted). To hold an individual police officer liable for the use of excessive force, a plaintiff must show that the officer "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." Binay, 601 F.3d at 650. "As a general rule, mere presence at the scene of [the alleged constitutional violation], without a showing of direct responsibility for the action, will not subject an officer to liability." Id. Additionally, "[e]ach defendant's liability must be assessed individually based on his own actions." Id.

In determining whether a constitutional violation based on excessive force has occurred, courts apply "the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." Fox v. DeSoto, 489 F.3d 227, 236 (6th Cir. 2007) (citing Graham v. Connor, 490 U.S. 386, 395–96 (1989)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396–97. "Relevant considerations include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Fox, 489 F.3d at 236 (internal quotation marks and citation omitted).

Here, the Court finds that Defendants Rood, LaTour, Periatt, and Notorlano are not entitled to qualified immunity on Plaintiff's excessive force claim. There is no dispute that the right to be free from excessive force was clearly established at the time of the alleged violation. The issue here is whether Plaintiff has set forth sufficient facts to show that Defendants violated Plaintiff's Fourth Amendment rights. More precisely, whether the amount of force that the officers used to secure and detain Plaintiff was objectively reasonable given the circumstances. Defendants have one version of the facts, Plaintiff another. They dispute whether Plaintiff had his hands in the air when he emerged from the house; whether LaTour, Notorlano and Rood preemptively tackled Plaintiff from behind while he was attempting to get down; whether he was kicked and hit in the face after being tackled; and whether he resisted arrest while Rood and Periatt

10

applied handcuffs. A jury must determine these material facts before a court can decide whether the amount of force used was excessive or unreasonable under the circumstances. Taking the available evidence in a light most favorable to Plaintiff, he has proffered sufficient facts to show that Rood, LaTour, Periatt, and Notoriano violated his Fourth Amendment rights. Therefore, these Defendants are not entitled to qualified immunity. Additionally, under recent Sixth Circuit authority, Plaintiff's no contest plea to resisting arrest does not preclude him from advancing an excessive force claim based on that arrest. See Schreiber v. Moe, 596 F.3d 323, 334 (6th Cir. 2010); Karttunen v. Clark, 369 F.App'x. 705 (6th Cir. 2010) (applying Schreiber).

As for Defendants Bergeron and Spens, the Court finds they are both entitled to qualified immunity. These officers did not tackle Plaintiff to the ground or participate in handcuffing him. (Doc. 53 Ex. 15 at 16-24; Ex. 16 at 14-20). Plaintiff can hold them liable only if they had an chance to prevent the excessive force but did not. See Binay, 601 F.3d at 650. The Sixth Circuit recently stated that there can be no excessive force liability if the facts establish that a defendant officer lacked sufficient time or a realistic opportunity to prevent an attack. Bletz v. Gribble, 641 F.3d 743, 754 (6th Cir. 2011) (collecting cases). Here, Bergeron positioned himself in the backyard of Plaintiff's residence and did not know what was transpiring in the front of the home. Though he transported Plaintiff to a vehicle after he had been handcuffed by other officers, Bergeron had no further or prior physical contact with Plaintiff. Spens provided cover for the ERT team from nearly thirty feet away and had no physical contact with Plaintiff. Given the parties agree that the tackling and handcuffing of Plaintiff occurred in a manner of seconds, neither Bergeron or Spens were in a realistic position to prevent

any alleged act of excessive force against Plaintiff. Accordingly, qualified immunity protects them from excessive force liability.

### 3. The Unlawful Arrest and Unlawful Search Claims

Regarding the "unlawful arrest" claim, the Court notes Plaintiff did not advance any argument with respect to this claim in his response brief or at oral argument. Accordingly, the Court considers this claim abandoned and in any event, finds that the officers had probable cause to arrest Plaintiff in light of the circumstances which lead to the six-hour standoff. See Klein v. Long, 275 F.3d 544, 550 (6th Cir. 2001) ("Probable cause to make an arrest exists if, at the moment of the arrest, the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.").

As for the "unlawful search" claim, the Court finds that qualified immunity protects Defendants' warrantless search of the residence. Although the right to be free from warrantless searches of one's home is "clearly established" for the purposes of evaluating a qualified immunity defense, see O'Brien v. City of Grand Rapids, 23 F.3d 990, 999 (6th Cir. 1994), Plaintiff cannot show his Fourth Amendment rights were violated because Defendants conducted the home search under the exigent circumstance exception to the warrant requirement.

It is well-settled that warrants are generally required to search a person's home unless the "exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." Mincey v. Arizona, 437 U.S. 385, 390 (1978). Exigent circumstances

exist where there is a risk of danger to the police or others. Johnson v. City of Memphis, 617 F.3d 864, 868 (6th Cir. 2010). In determining whether exigent circumstances justified a warrantless search, the inquiry is whether the "facts are such that an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed." Ewolski v. City of Brunswick, 287 F.3d 492, 501 (6th Cir. 2002).

Here, it is undisputed that Plaintiff discharged a weapon, committed a felonious assault, possessed firearms and ammunition, and held police at bay in a six-hour standoff. After Plaintiff was lawfully arrested, exigent circumstances obligated the officers to clear the home of any risks of danger, including other possible occupants, loaded firearms, and partially discharged CS gas canisters which presented an immediate fire hazard. Failure to do so would have presented further danger to the officers and the public. Defendants are therefore entitled to qualified immunity on Plaintiff's "unlawful search" claim.

### B. The Assault and Battery Claims Against Defendant Rood

Plaintiff brings a claim for assault and battery against Defendant Rood under Michigan law. An assault is "an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." Grawey v. Drury, 567 F.3d 302, 315 (6th Cir. 2009) (internal quotation marks and citation). A battery is "an unintentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." Id. Under Michigan law, "a police officer may use reasonable force when making an arrest. Therefore, the measure of necessary force is that which an ordinarily prudent and

intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary." Marvin v. City of Taylor, 509 F.3d 234, 252 (6th Cir. 2007) (internal quotation marks and citations omitted).

Viewing the record in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendant Rood's alleged actions constitute the torts of assault and battery. The analysis here mirrors that of Plaintiff's § 1983 excessive force claim. Rood was one of the officers who brought Plaintiff to the ground after he emerged from his home at the end of the stand-off. Though Rood maintains his use of force was reasonable under the circumstances and denies unnecessarily striking Plaintiff, Plaintiff tells a different story of what happened during the take-down and while he was on the ground. A jury must resolve these genuine issues of material fact. Accordingly, Defendant Rood is not entitled to summary judgment on this claim.

### C. The Gross Negligence Claim

In addition to the above described intentional torts, Plaintiff also alleges Defendants were grossly negligent in carrying out their police activities at his residence. Plaintiff states this claim is based on the notion that, "There was no justifiable reason for Defendants to have kicked and struck Plaintiff." (Doc. 57 at 18). If the jury determines that Defendants unnecessarily kicked and struck Plaintiff during the arrest, such conduct would be considered intentional. Under Michigan law, intentional acts giving rise to intentional torts cannot form the factual basis of a gross negligence claim. Van Vorous v. Burmeister, 687 N.W.2d 132, 143 (Mich. Ct. App. 2004) ("[T]his Court has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence."); see also Bletz v. Gribble, 641 F.3d 743, 756 (6th Cir. 2011)

(applying Van Vorous and refusing to transform an excessive force claim into a claim of gross negligence); Livermore ex rel. Rohm v. Lubelan, 476 F.3d 397, 408 (6th Cir. 2007) (rejecting gross negligence claim against an officer-defendant because it was "undoubtedly premised on the intentional tort of battery").

Here, Plaintiff's gross negligence claim undeniably arises from the same set of facts as do the claims for excessive force and assault and battery. He fails to explain how such a claim survives the holdings Van Vorous and its progeny. Plaintiff does not distinguish or even mention that line of controlling authority. Accordingly, the gross negligence claim fails as a matter of law. Accord Burnett v. City of Highland Park, No. 09-14238, 2011 WL 5142969, *7 (E.D. Mich. October 28, 2011) (applying Bletz and dismissing a claim of gross negligence premised on facts giving rise to an excessive force claim).

### D. The Monell Claims

In his 42 U.S.C. § 1983 claim against the City of St. Clair Shores brought pursuant to Monell v. Dept. of Social Servs. of the City of New York, 436 U.S. 658 (1978), Plaintiff alleges the City failed to adequately train its police officers in the use of force and the constitutional rights of citizens and failed to supervise and/or discipline officers known to have violated citizen's rights. The City maintains that the undisputed facts do not support a cognizable Monell claim. The Court sets forth the principles of municipal liability under Monell before analyzing Plaintiff's proofs on the "failure to supervise/discipline" and "failure to train" claims.

### 1. Municipal Liability Under § 1983 and Monell

A plaintiff who seeks to impose liability on a local government under 42 U.S.C. § 1983 must prove that action pursuant to official municipal "policy or custom" caused his injury. Monell, 436 U.S. at 691. Official municipal "policy or custom" includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. Id. The alleged policy or custom must be the "moving force of the constitutional violation." Id. at 694. This requires that the plaintiff (1) identify the policy or custom, (2) connect it to the municipality and (3) show that the execution of that policy or custom caused the plaintiff's injury. Garner v. Memphis Police Dept., 8 F.3d 358, 364 (6th Cir. 1993).

### 2. Failure to Supervise/Discipline

The Sixth Circuit "has held that a failure to investigate complaints or discipline officers can give rise to § 1983 liability." Dyer v. Casey, 72 F.3d 129, *2 (6th Cir. 1995) (Table) (citing Marchese v. Lucas, 758 F.2d 181, 188 (6th Cir. 1985); Leach v. Shelby Cnty. Sheriff, 891 F.2d 1241, 1247 (6th Cir. 1989)). To succeed on a claim for failure to supervise or discipline, the plaintiff must prove that: (1) the supervision or discipline was inadequate for the tasks the officers were performing; (2) the inadequacy resulted from the municipality's "deliberate indifference"; and (3) the inadequacy caused the injury. Ellis v. Cleveland Municipal Sch. Dist., 455 F.3d 690, 700 (6th Cir. 2006). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997). Additionally, in the failure to discipline context, a

16

plaintiff must show "a history of widespread abuse that has been ignored by the city." Berry v. City of Detroit, 25 F.3d 1342, 1354 (6th Cir. 1994).

In support of his failure to supervise/discipline claim, Plaintiff relies solely on the deposition testimony of Defendants LaTour and Periatt in which they stated that they have not had a formal job performance evaluation since the new police chief took over sometime 2009. (Doc. 57 Ex. H at 10-11; Ex. J at 9). This testimony does not demonstrate that the City failed to supervise or discipline the officers during the relevant timeframe, i.e., before Plaintiff's June 4, 2008 arrest. To the contrary, the depositions show that the officers were given regular evaluations under the old police chief during the time at which the events in this action occurred. Other than citations to these equivocal deposition excerpts, Plaintiff offers no additional evidence in support of his failure to supervise/discipline claim. Consequently, the proofs offered on this claim are insufficient to present to the jury and the City is entitled to summary judgment.

### 3. Failure to Train

A municipality "is liable under § 1983 for failure to train if the Plaintiff can prove three elements: (1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the [municipality]'s deliberate indifference; and (3) that the inadequacy is closely related to or actually caused [Plaintiff's] injur[ies]." Plinton v. County of Summit, 540 F.3d 459, 464 (6th Cir. 2008) (internal quotation marks and citation omitted). To establish deliberate indifference, the plaintiff "must show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." Id. A pattern of similar

constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train claims. Brown, 520 U.S. at 409.

Plaintiff offers only the deposition testimony of Defendants LaTour, Notorlano, and Spens, and non-party police officer Thomas Saville in support of his failure to train claim. These officers testified that although they received use of force training, they could not precisely recall when the last training had occurred. (Doc. 57 Ex. G at 13-14; Ex. H at 8-9; Ex. I at 7-8; Ex. L at 6-8). The officers' testimony on this point is insufficient to satisfy the demanding "deliberate indifference" standard of fault associated with a failure to train claim. That these officers could not recall their last use of force training does not mean the City failed to train them. Moreover, the undisputed record fatally undermines Plaintiff's claim that the City's training program was a constitutionally defective.

The City's police officers are academy trained and MCOLES certified. (Doc. 53 Ex. 18). All police officers receive regular and continuous training regarding the proper use of force. Id. Each officer is provided significant "in-service training", "policy and procedure training", and regular legal updates. Id. The City has an established use of force policy and regularly trains its officers regarding that policy. Id.; see also (Doc. 53 Ex. 9 at 8; Ex. 10 at 8-9; Ex. 15 at 7-8; Ex. 16 at 8). Additionally, the officers who arrested Plaintiff, as members of the ERT team, are trained monthly on the proper methods for handling just the type of situation which was presented in this case. (Doc. 53 Ex. 6 at 11; Ex. 18).

Plaintiff offers no evidence to rebut or challenge the sufficiency of the City's training regime. He offers no analysis or criticism of the training provided. He did not

18

depose any supervisors or training officers and has not retained an expert witness on the training issue. Further, Plaintiff offers no evidence linking a lack of training to the alleged excessive force used against Plaintiff on June 4, 2008. Plaintiff's proofs are simply not enough to carry the heavy burden of production assigned to this type of <u>Monell</u> claim. Therefore, the City is entitled to summary judgment.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (Doc. 53) is **GRANTED-IN-PART and DENIED-IN-PART**.

The only two claims that will proceed to trial in this matter are: (1) the § 1983 excessive force claim against Defendants Rood, LaTour, Periatt, and Notorlano and (2) the assault and battery claim against Defendant Rood.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: March 30, 2012

### CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Order was served upon all Counsel of record via the Court's ECF Filing System.

s/Bernadette M. Thebolt
Case Manager